[Civ. No. 24446. Second Dist., Div. Three. Nov. 10, 1960.]

MARY HADDAD et al., Respondents, v. FRANK L. ABEL et al., Appellants.

Harned Pettus Hoose, Wayne I. McClaskey and Maurice L. Muehle for Appellants.

Earl D. Reese for Respondents.

SHINN, P. J.—Pursuant to a contract consisting of escrow instructions under date of August 27, 1956, Mary Haddad purchased from Frank L. Abel and Edythe W. Abel, owners as joint tenants, a parcel of land (Lot 1), and from Milo M. Kensrue and Helen L. Kensrue, owners as joint tenants, an adjoining parcel (Lot 2). The parcels comprised two or more building sites on a hillside in Los Angeles. Mrs. Haddad paid the Abels $5,250 and Lot 1 was placed in the name of her daughter, Evelyn, who gave back a note and trust deed for an equal amount. The Kensrues were paid $10,500 as the full price of Lot 2. The level portions of the lots were built up of filled ground to the extent of about one half of their total surface area, the fill ranging from 2 to 40 feet in depth. The fill was uncompacted. Adjoining Lot 1 on the west was a lot owned by one Morris. All the building sites on the lots had been formed by excavating into the hillside to create level spaces or benches which are commonly called "pads." The level area of the Morris lot was about 30 feet below the level of Lot 1; where the two lots joined a high bank stood at an angle of 80 or 90 degrees. In order to qualify as building sites under ordinance Number 100347 of the city, the portion of the fill which was on Lot 1 would have to be removed and compacted, as it was replaced, but Lot 2 could be made use of by the sinking of caissons to solid ground. The major portion of the fill was on Lot 1. In order to render the Morris lot, and perhaps Lot 1, available for residential construction under the ordinance it was necessary that the bank at the edge of Lot 1 be regraded to a slope of not over 45 degrees.

The property had previously been owned by one Smith, who was the grantor of Abel and Kensrue. Smith had made the excavations for the creation of the building sites and had spread out the removed material beyond the solid portions of the benches. He was under an obligation to permit Morris to cut back 15 feet into Lot 1 in order to regrade the bank to an angle of 45 degrees. At the time he sold the lots to

Abel and Kensrue, the latter signed escrow instructions stating that they were buying the property "as is," were aware of ordinance Number 100347 and that the outer area was filled, and also that they knew that Morris, the adjoining property owner, had a right to cut into 15 feet of Lot 1 in order to grade his lot so as to comply with the ordinance.

It was proved that prior to the trial of the action, Mary Haddad, in order to comply with the city ordinance, had caused to be removed 16,000 yards of the fill and had it compacted when it was replaced and that she had granted to Morris the right to invade Lot 1 for 15 feet in order to regrade his lot.

It was alleged in the complaint that defendants, knowing of the filled condition of the lots and of the necessity for permitting the use of part of Lot 1 in order that the existing bank be regraded, falsely represented to plaintiffs that the lots were not filled, to their knowledge, and also that they concealed the filled condition for the purpose of inducing plaintiffs to purchase the lots; plaintiffs were ignorant thereof at the time of the contract of purchase, and did not learn of the filled condition until about a year thereafter. It was alleged, however, that plaintiffs did learn of the condition of the bank on the Morris lot and of Abels' agreement with Morris on November 27th before they concluded their purchases. It was alleged that plaintiffs had granted to Morris a right to use 15 feet of the westerly portion of Lot 1 in order to regrade the bank. The answers of defendants consisted of denials. Upon the trial judgment was entered against the defendant husbands and wives for damages in the sum of $7,000. It also restrains the Abels from foreclosure of the trust deed on Lot 1 until a judgment in the action shall have become final. Defendants appeal.

Defendants first contend that the court failed to make findings upon the material issues. They specify eight particulars in which it is contended the findings are deficient. We are of the opinion that they are inadequate.

The court found to be true the allegations of paragraphs I, II, IV, V, VI, IX and X of the complaint, and made certain additional findings.

It is readily seen that the issues were simple; the existence of the filled condition of the lots, knowledge of that condition possessed by defendants, misrepresentation and concealment of the condition, plaintiffs' lack of knowledge, and their reliance upon defendants' misrepresentation or concealment, and

the question of damage. The complaint consists of 22 numbered paragraphs, covering 14 full, closely typed pages of the clerk's transcript. Instead of containing ''a statement of the facts constituting the cause of action in ordinary and concise language'' as required by section 426 of the Code of Civil Procedure, the complaint appears to be a statement of all the evidence which plaintiffs intended to produce, and many other and irrelevant facts. The findings were prepared by an attorney other than the one who drafted the complaint.

The present case furnishes a graphic illustration of the confusion, error and vexation that so often results from the practice of making findings by reference to the allegations of a complaint. We are unable to understand why lawyers in preparing findings do not take the trouble to single out ''the facts constituting the cause of action,'' and make findings upon those facts. If the facts alleged state a cause of action, findings of the same facts will support a judgment. Findings of ultimate facts imply the existence of all evidentiary facts consistent therewith. Findings of all the facts constituting the cause of action in the present case could have been stated on a single page.

 Unfortunately, the eight paragraphs, the allegations of which were found to be true, do not contain the allegations which constituted the cause of action. The material allegations were, for the most part, contained in the 14 paragraphs to which the findings make no reference.

In the paragraphs that were incorporated in the findings there was no allegation that the lots were filled, although it was alleged that Smith had informed Abel and Kensrue that the lots were filled; there was no allegation that defendants represented that the lots were not filled or that they concealed the fact from plaintiffs that they were filled; there was no allegation that plaintiffs purchased the lots without knowledge of the filled condition or that they were deceived by the failure of defendants to disclose the facts; there was no allegation of threatened foreclosure of the trust deed held by the Abels, and there was no allegation that plaintiffs had suffered damage on any account.

The court made the following additional findings: ''II. It is true that prior to the close of the escrow with defendants Frank L. Abel and Edythe W. Abel but after the close of the escrow with Milo M. Kensrue and Helen L. Kensrue plaintiffs had knowledge of the fill condition existing on the subject property of the escrows. III. It is true that prior to the close

of the escrow with defendants Frank L. Abel and Edythe W. Abel but after the close of the escrow with Milo M. Kensrue and Helen L. Kensrue plaintiffs had knowledge of the excavation and the slope of the property on the side adjacent to property owned by one Loy E. Morris. IV. It is true that defendants Frank L. Abel, Edythe W. Abel, Milo M. Kensrue and Helen L. Kensrue knew of the filled ground prior to the sale to plaintiffs and neglected and failed to inform plaintiffs of the filled condition which resulted in damages to the plaintiffs. V. It is true that defendant Frank L. Abel, by his certain instrument in writing, but no [sic] of record, in conformity with his agreement with one Chester A. Smith and wife did grant to said Loy E. Morris a strip of land 15 feet in width along the west boundary of the property sold to plaintiffs. Plaintiffs did not learn of this grant until after the close of the Kensrue escrow but did have knowledge prior to the close of the Abel escrow. Plaintiffs thereafter granted to said Loy E. Morris the right to use an additional 15 feet to allow to correct the slope between said respective properties to allow the issuance of a building permit. VI. It is true that the Preliminary Injunction is still pending granting and restraining defendants Abel from proceeding with an action of foreclosure under a deed of trust effecting the subject property between plaintiffs and said defendants.''

The Kensrue escrow was closed December 5th; the Abel escrow, December 10th. The finding that plaintiffs learned of the obligation to Morris before the close of the Abel escrow but after the close of the Kensrue escrow is contrary to the allegation of the complaint that plaintiffs learned of the condition of the bank and of the obligation to Morris on November 27th.

The finding that plaintiffs learned of the filled condition of the lots after the close of the Kensrue escrow but before the close of the Abel escrow evidences confusion with the interval between December 5th and December 10th in which it was found that plaintiffs learned of the obligation to Morris. The finding does not conform to the evidence. It appears from the confusion in the findings that the court did not intend to find that plaintiffs learned of the filled condition after the close of the Kensrue escrow but before the close of the Abel escrow. There was no evidence to support such a finding. If plaintiffs learned of it at all it was by reason of the following facts, which were in evidence: plaintiffs stood upon and inspected the property; it was a fact that could have

been observed by one standing upon the property that when a great quantity of material (16,000 yards) was excavated from the hillside it was spread out to increase the size of the level area. This disposition of the material would have been necessary unless it had been hauled away at great expense. Mary Haddad had previously subdivided property into 12 building lots in plush Coldwater Canyon and was not inexperienced in real estate operations; there was evidence that Kensrue exhibited to Mary Haddad a plan he had prepared for a residence on Lot 2; the plan showed a swimming pool in front of the building; Mrs. Haddad told Kensrue that he could not have placed the swimming pool there because it was filled ground; Kensrue said it would be made of concrete and Mrs. Haddad replied that that would make no difference. In addition, there was evidence that Mrs. Haddad stated to Abel and Kensrue that she would have to install caissons, although she did not state where they would have to be installed. All this evidence related to times before the closing of the escrows.

█ A definite finding as to the time when plaintiffs learned of the fill, whether before or after they made their purchases, was essential if there was evidence that would have supported a finding that they had knowledge of that fact before they parted with their money. (*Chacon* v. *Austin*, 110 Cal. App.2d 145 [241 P.2d 1037].) █ It clearly appears that there was evidence from which the court could have found that plaintiffs had knowledge of the fill before they concluded their purchases.

█ From the express finding that plaintiffs learned of the fill on the lots before they concluded their purchase from the Abels it follows that they were not deceived in that transaction, and the judgment against the Abels must be reversed. Necessarily the joint judgment must be reversed as to all defendants.

Effect could not be given to the present findings so as to permit affirmance of the judgment against any of the defendants.

Other matters of procedure of which defendants complain do not require decision.

The judgment is reversed.

Vallée, J., concurred.

Ford, J., did not participate.

Respondents' petition for a hearing by the Supreme Court was denied January 4, 1961.